IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARY MCLEROY, *o/b/o W. C., a minor*, | : : : | |
| Plaintiff, | : : | |
| v. | : : | No. 5:16-cv-484-MTT-CHW |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security*, | : : : | Social Security Appeal |
| Defendant. | : : : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Mary McLeroy's application for benefits, filed on behalf of W.C., a minor. Because substantial evidence supports the Commissioner's decision, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's Motion to Remand (Doc. 15) be **DENIED**.

## BACKGROUND

W.C. ("claimant") was born on January 9, 2008. (R. 385). Plaintiff filed an application for Social Security benefits on claimant's behalf, alleging disability as of February 15, 2009. (R. 195). That application was denied initially and on reconsideration, (R. 194–220), and Plaintiff subsequently requested review before an administrative law judge ("ALJ"). At a hearing before the ALJ on May 15, 2014, Plaintiff argued that claimant was disabled due to problems associated with his lower extremities, as well as psychiatric issues. (R. 170). In an opinion dated March 26, 2015, the ALJ determined that claimant was not disabled within the meaning of the Social Security Act. (R. 141–55). Plaintiff subsequently sought further administrative review

1

before the Appeals Council, to whom Plaintiff submitted additional evidence. The Appeals Council determined that much of Plaintiff's new evidence was chronologically irrelevant, and it denied Plaintiff's request for further review on September 7, 2016. (R. 1–4). Plaintiff now seeks review before this Court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Persons under the age of 18 are "disabled" for purposes of receiving Title XVI benefits if they have "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

When analyzing the issue of disability for persons under the age of 18, the ALJ uses a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b).

At step two, if the child is not engaged in substantial gainful activity, the ALJ determines whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ determines whether the child's impairment or combination of impairments meets or medically or functionally equals one of the listed impairments, and otherwise satisfies the duration requirement. 20 C.F.R. § 416.924(d).

To determine whether a child's impairments functionally equal a listed impairment, the ALJ must consider six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalent" standard, the child must have either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## MEDICAL RECORD

The medical record in this case begins in 2008, with claimant's birth on January 9. (R. 385). Treatment notes show concern due to claimant's mother's history of cocaine use. (R. 385, 390, 433). In August 2008, claimant underwent a successful ventilation treatment for an ear infection and tube disorder. (R. 387). Claimant also received treatment for possible asthma, as well as a staph infection, in late 2008. (R. 463, 465, 478–79, 484). During 2009, claimant received follow-up care for his ear condition, (R. 486–93), as well as successful treatment for curved feet. (R. 498–504).

The next available, pertinent record shows treatment for asthma in August 2011. (R. 511). That record also indicates that claimant, then 3 years and 7 months old, was

demonstrating behavioral problems, such as outbursts "with threats to other children and mother about killing them." (R. 511). In September 2011, claimant was diagnosed with major depressive disorder and an autistic disorder during an initial psychiatric evaluation with Dr. Deepti Bhasin. (R. 505). At this time, Dr. Bhasin prescribed Clonidine. (R. 511).

In January 2012, claimant reported pain in his legs, and was diagnosed with Blount's Disease, for which he received knee braces. (R. 517). Dr. William Hutchings, who performed a general consultative examination in furtherance of claimant's Social Security application, stated in April 2012 that claimant's knee braces had "helped the pain and there are no plans for surgery at this time." (R. 541). Dr. Hutchings also noted claimant's past behavioral problems, but stated that claimant "was started on medications that have calmed his aberrant behavior" and that he "has a less labile persona and the threats to life have resolved." (R. 541).

Claimant also underwent a psychological evaluation in March 2012. The evaluator, Dr. Michael P. Rose, Ph.D., noted that claimant was then taking oxcarbazepine (Trileptal), observing that claimant's psychoactive medication had some benefit with the control of temper tantrums and that claimant had fewer destructive and violent episodes. (R. 525). A March 2012 record from Dr. Deepti Bhasin similarly states: "Parents are very pleased with behavioral changes, far fewer tantrums and no nightmares." (R. 537).

Based on his evaluation, Dr. Rose concluded that claimant was "of an above average intelligence," and he noted that claimant demonstrated normal attention and concentration, as well as average working memory, during the evaluation process. (R. 526). Dr. Rose found that claimant met the criteria for "ADHD, Combined Type, mild to moderate with medication," but stated that there "was not enough time (years in the child's life) or evidence to support a behavior disorder." (R. 527). With regard to the six functional domains, Dr. Rose found that

claimant was mildly impaired in his ability to acquire and use information and moderately impaired in his ability to interact appropriately with others, but with regard to the four remaining domains, Dr. Rose found that claimant had no impairment. (R. 527–28).

Claimant continued to treat with Dr. Bhasin during 2012 and into 2013. (Ex. 26F). Dr. Bhasin's 2012 records show signs of improvement with medication. In June and September 2012, for example, Dr. Bhasin noted that claimant "show[ed] a partial treatment response." (R. 811, 813). In October 2012, based on reports that claimant was "borderline being kicked out of school," Dr. Bhasin concluded that claimant's inattentiveness had increased but that he "exhibits no signs of attentional or hyperactive difficulties." (R. 809). Dr. Bhasin prescribed Adderall, (R. 810), and in November 2012, claimant reported improvement. (R. 807).

In January 2013, based on reports of continued inattentiveness, Dr. Bhasin discontinued claimant's Adderall prescription and instead prescribed Ritalin. (R. 804). Claimant initially reported improvement in February 2013, (R. 801), but then reported a setback in April 2013, leading Dr. Bhasin to discontinue the Ritalin prescription and instead prescribe Concerta. (R. 800). In June 2013, Dr. Bhasin discontinued the Concerta prescription and instead reverted to an Adderall prescription. (R. 798). During this period, claimant also received medical care for a respiratory infection in February 2013, (R. 585), as well as for gastroenteritis in March 2013. (R. 581).

In late August 2013, claimant was provided with emergency care and follow-up psychological care after reportedly "[t]alking about dying for 2 weeks," as well as "threatening to harm his 9-mo[nth] old sister." (R. 634). Claimant himself denied making such statements, (R. 654) ("I ain't said I was gonna kill nobody"), but claimant did report auditory and visual hallucinations, for which he was prescribed Trilafon. (R. 663). Emergency-room records note

concern over "recent med changes." (R. 634). The record shows a similar occurrence in October 2013, when claimant received psychological care after reportedly making threats toward family members. Claimant himself denied making any such statements. (R. 730).

In January 2014, claimant received treatment for a head laceration. (R. 622). In April 2014, claimant received treatment for visual hallucinations after he "stopped taking Trilafon four days ago." (R. 612, 815). The record also indicates that claimant had decreased his prescribed Clonidine dosage. (R. 766).

In May 2014, Thomas Friedrichs, Ph.D., performed a psychological evaluation, concluding that there was "no more than a slight suggestion of an Attention Deficit Hyperactivity Disorder." (R. 793). Based on a Wechsler intelligence test, Dr. Friedrichs assigned claimant an estimated full scale I.Q. score of 112. (R. 790). Dr. Friedrichs noted that claimant had recently 'been taken to an emergency room for severe visual hallucinations that followed the discontinuing of a medication." (R. 789) (internal quotations omitted).

In June 2014, claimant received emergency care based on reports of aggressive behavior and hallucinations, including a reported command hallucination to "cut Steve Harvey's head off (re: program on TV)." (R. 862) (internal quotations omitted). Treatment notes indicate concern with medication compliance. (R. 839, 859).

In August 2014, Jerry Cottone, Ph.D., reviewed claimant's medical history and completed a medical interrogatory. Dr. Cottone concluded that claimant displayed "low frustration tolerance," but that claimant's symptoms were "well controlled when taking medication consistently." (R. 882). Dr. Cottone also opined that the record contained a "range of mental health diagnoses, and it may take more time to determine which symptoms become chronic and severe." (R. 883). In December 2014, claimant received medical care based on

6

reports of violent and anti-social behavior at school, including stealing a toy car. (R. 924). In January 2015, Robert P. Borda, Ph.D., reviewed claimant's medical history and completed a medical interrogatory. Dr. Borda opined that claimant's symptoms were "fairly well controlled [with] meds." (R. 913).

The record also contains materials submitted for the first time to the Appeals Council, after the ALJ issued his March 26, 2015 opinion. Those materials include a disability evaluation form in which Dr. Cottone reiterated his opinion that claimant's medications were effective when properly administered. (R. 954). The materials also include records from the Houston County School System, and from additional occasions of treatment for further reported psychological incidents. (Ex. 40F) (R. 8–127).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the three-step sequential evaluation procedure, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that claimant had not engaged in substantial gainful activity since February 2, 2012, the application date. (R. 144). At step two, the ALJ found that claimant suffered from the following severe impairments: "Blount's disease; asthma; attention deficit hyperactivity disorder (ADHD); mood disorder; anxiety disorder; and oppositional defiant disorder (ODD)." (R. 144). At step three, the ALJ found that claimant's impairments did not meet or equal one of the listed impairments. With regard to the six domains, the ALJ found that claimant had (1) a less than marked limitation in acquiring and using information; (2) a less than marked limitation in attending and completing tasks; (3) a less than marked limitation in interacting and relating with others; (4) a less than marked limitation in moving about and manipulating objects; (5) a less than marked limitation in the ability to care for himself; and (6) a less than marked limitation in health and physical well-being. (R. 148–54).

Accordingly, the ALJ determined that claimant was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two arguments in this appeal, both of which relate to claimant's psychological functioning. First, Plaintiff argues that the ALJ erred in finding that the claimant failed to take his prescribed medication. That error, Plaintiff argues, undermines the ALJ's conclusion that claimant's more severe symptoms were not present while claimant was compliant with his medication regimen. Second, Plaintiff argues that evidence submitted for the first time to the Appeals Council renders the ALJ's opinion erroneous. As discussed below, the record supports neither of Plaintiff's arguments.

(a) <u>Medication Compliance</u>

Plaintiff first argues that the ALJ erred in failing to find that claimant suffered from "marked" limitations in two or more of the functional domains. (Doc. 15-1, p. 14). According to Plaintiff, the ALJ improperly determined that claimant suffered from less severe psychological symptoms while compliant with his medication regimen. Plaintiff cites, in particular, a portion of the ALJ's opinion which reads as follows:

> In the medical evidence and school record evidence, the claimant's condition is remarkable for episodes of outburst and regret, substantially coincident with non-use of prescribed medication, so the various low GAF scores in the record are given less relative weight as opinions (Exhibits 21F, 23F, 24F, 27F, 29F, 34F, 38F[ ) ]. The claimant's high GAF scores indicate he has benefits of treatment ([see] Exhibits 13E, 14E and 27F indicating he was hospitalized due to non-compliance and related discussion in the record of "extreme" misbehavior when off medication contrasted with normal reports from school and the higher GAF scores, including Exhibits 22F-24F, 26F and 25F).

(R. 148)

The record amply supports the ALJ's conclusion in this regard. Hearing testimony, (R. 176), medical opinions from Dr. Michael Rose (R. 525), Dr. Thomas Friedrichs (R. 789), Dr. Jerry Cottone (R. 882), and Dr. Robert Borda (R. 913), and records from claimant's hospital visits (R. 612, 634, 766), all suggest that claimant's symptoms were at least partially managed with medication, and that claimant suffered from severe psychological symptoms primarily when claimant failed to take his medication, or when claimant's treating sources, such as Dr. Deepti Bhasin, altered claimant's medication regimen.

This Court is not authorized to reweigh the evidence, but rather must defer to the Commissioner's findings of fact if those findings are supported by "substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). On this record, "substantial evidence" supports the ALJ's finding that claimant's psychological symptoms were adequately managed while claimant was compliant with his medication regimen. Therefore, Plaintiff's first argument does not provide grounds for a remand.

(b) <u>New Evidence Before Appeals Council</u>

Plaintiff next argues that the Appeals Council erred by denying review in light of new evidence, and in particular, in light of a March 2015 school psychological evaluation, (Ex. 40F), along with subsequent psychological treatment records and additional records from the Houston County School System. (R. 8–127).

The Appeals Council considered claimant's March 2015 school psychological evaluation, *see* (R. 6), but found that it did not provide a basis for altering the ALJ's decision. (R. 2). The Appeals Council was not required to provide a detailed discussion of the psychological evaluation, *see Mitchell v. Comm'r*, 771 F.3d 780, 783 (11th Cir. 2014), and substantial evidence supports the Appeals Council's decision to deny review, notwithstanding the evaluation.

The school psychological evaluation itself provides inconsistent conclusions. For example, the evaluation notes "significant concerns regarding inattention and hyperactivity-impulsivity," (R. 961), but also states that while claimant "presents with characteristics of ADHD, [he] does not have a current diagnosis." (R. 962). It is not clear, therefore, whether the school psychological evaluation is in fact suggestive of disability under the Social Security Act. Even if it were, however, the evaluation is not of sufficient weight as to overcome the substantial medical evidence in the record that supports the ALJ's decision.

Plaintiff also argues that the Appeals Council erred in disregarding as chronologically irrelevant school records and psychological treatment records created after the date of the ALJ's opinion, March 26, 2015. (Doc. 15-1, pp. 17–18). Plaintiff has not shown that these later records are chronologically relevant based on factors established by the Eleventh Circuit, *see, e.g.*, *Hargress v. Comm'r*, 874 F.3d 1284, 1291 (11th Cir. 2017) (setting out factors), and it is not clear that the records are chronologically relevant. For example, Plaintiff cites a September 2015 statement from Dr. Nathan Feibelman suggesting that the claimant was then "emotionally fragile" and required special education classes, (R. 23), but there is no indication that Dr. Feibelman reviewed claimant's extensive medical record from the alleged disability period, dating from February 15, 2009, through the date of the ALJ's decision. Nor is it clear that officials from the Houston County School System reviewed claimant's medical record.

Even if Plaintiff's new evidence were chronologically relevant, it is not at all clear that the evidence is "material," meaning there is "a reasonable possibility … that the evidence would change the administrative result." *Hargress*, 874 F.3d at 1290–91. In this regard, Plaintiff's later psychological treatment records show the same concern with claimant's lack of consistency in adhering to his medication regimen. *See, e.g.*, (R. 32) ("discussed with client and client's parents

to secure all medications in the home, in addition parent should directly administer the client's medication; the client should not be allowed to self-medicate"). There is, in other words, little basis to distinguish claimant's later psychological treatment records from the records expressly considered by the ALJ.

To summarize, claimant's school psychological evaluation does not provide grounds for altering the ALJ's decision, and Plaintiff has not demonstrated that the Appeals Council erred in disregarding Plaintiff's later-dated evidence. Accordingly, Plaintiff's second argument also does not provide grounds for a remand, and it is therefore recommended that the Commissioner's Decision be affirmed.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFRIMEDED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time in which to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which an objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on

appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 8th day of December, 2017.

                                            s/ Charles H. Weigle_____
                                            Charles H. Weigle
                                            United States Magistrate Judge